UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| LOUQUETTA R. O'CONNOR-SPINNER,  ) | |
| ) | |
| Plaintiff,  ) | |
| ) | |
| v.  ) | CASE NO. 4:06-cv-0171-DFH-WGH |
| ) | |
| MICHAEL J. ASTRUE, Commissioner  ) | |
| of the Social Security Administration,  ) | |
| ) | |
| Defendant.[1]  ) | |

ENTRY ON JUDICIAL REVIEW

Plaintiff Louquetta R. O'Connor-Spinner seeks judicial review of the
Commissioner of Social Security's final decision denying her claim for disability
insurance benefits and supplemental security income under the Social Security
Act. Acting for the Commissioner, an Administrative Law Judge (ALJ) determined
that Ms. O'Connor-Spinner suffered severe impairments from degenerative disk
disease, bilateral carpal tunnel syndrome, sleep apnea, restrictive lung disease,
obesity, and depression. However, the ALJ determined that she was not disabled
within the meaning of the Act because she could perform a substantial number
of jobs in the national economy despite her impairments. For the reasons
discussed below, the court affirms the Commissioner's decision.

---

[1]Michael J. Astrue took office as Commissioner of the Social Security
Administration while Ms. O'Connor-Spinner's case was pending before the court.
Commissioner Astrue is substituted as the defendant in this action pursuant to
Rule 25(d)(1) of the Federal Rules of Civil Procedure.

*Background*

Ms. O'Connor-Spinner was born in 1969. She has a high school education. She has work experience as a fast food worker, shoe gluer, nurse's aide, and deli clerk. On January 29, 2004, Ms. O'Connor-Spinner filed an application for disability insurance benefits and supplemental security income, asserting that she became disabled on December 18, 2003 due to symptoms stemming from a blood disorder, arthritis, and obesity. R. 74. Because this judicial review focuses on the ALJ's findings regarding Ms. O'Connor-Spinner's depression, the court concentrates primarily on facts relevant to that mental impairment.

In April 2002, Ms. O'Connor-Spinner saw a physician at the Community Mental Health Center in Lawrenceburg, Indiana. The physician completed an Initial Psychiatric Assessment. R. 363-65. Ms. O'Connor-Spinner reported that she had been in and out of suicide wards as a teenager. R. 363. At the time of the April 2002 visit, she was diagnosed with depression disorder and assigned a GAF of 55. R. 365.[2]

In October 2002, at the request of the Social Security Administration, F. Kladder, Ph.D., reviewed the April 2002 records from the Community Mental

---

[2]GAF stands for Global Assessment Functioning. It is a mental health rating that estimates a person's psychological, social, and occupational capabilities. American Psych. Ass'n, *Diagnostic & Statistical Manual of Mental Disorders* 34 (4th ed. Text rev. 2000) ("DSM-IV"). A GAF score between 51 and 60 indicates moderate difficulty in social, occupational, or school functioning. *Id.* at 32.

Health Center and completed a Psychiatric Review Technique Form.  R. 372-85. Dr. Kladder diagnosed Ms. O'Connor-Spinner with dysthymic disorder but concluded the impairment was not severe.  Under the paragraph "B" criteria for the listed mental impairments, Dr. Kladder found that Ms. O'Connor-Spinner had mild restriction of activities of daily living, mild difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation.[3]

As part of its disability determination, the Social Security Administration asked Kamla Paul, Ph.D., to evaluate Ms. O'Connor-Spinner in May 2004. R. 247. Dr. Paul conducted a clinical interview and mental status examination.  Dr. Paul noted an Axis I diagnoses of Depressive Disorder (not otherwise specified) and assigned a GAF score of 55.  R. 250.

Consulting reviewer D. Unversaw, Ph.D., completed a Psychiatric Review Technique Form and mental residual functional capacity assessment of Ms.

---

[3] The Paragraph B criteria on the Psychiatric Review Technique Form are the same as the four broad categories used by the Commissioner to evaluate the functional limitations caused by a mental impairment.  See 20 C.F.R. § 416.920a(c)(3); 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 12.00.  Generally, when claimants have "marked" functional loss in two or more categories, they will meet the criteria for a listed impairment.  See Lembke v. Barnhart, No. 06-C-0306-C, 2006 WL 3834104, at *4, n.2 (W.D. Wis. 2006).  If the claimant has a severe mental impairment that fails to meet a listing, then the medical consultant will rate the claimant's ability to perform 20 specific work-related functions itemized on the "Mental Functional Capacity Assessment" form (SSA-4734-F4-SUP).  Id. After rating the claimant's ability in each area as not significantly limited, moderately limited, or markedly limited, the consultant is instructed to elaborate on the findings in narrative form.  Id.

O'Connor-Spinner in May 2004.  Dr. Unversaw diagnosed Ms. O'Connor-Spinner with Depressive Disorder (not otherwise specified).  R. 254.  Under the Paragraph B criteria for the listed mental impairments on the Psychiatric Review Technique form, Dr. Unversaw concluded that Ms. O'Connor-Spinner had mild difficulties in maintaining social functioning, mild difficulties in activities of daily living, and moderate difficulties maintaining concentration, persistence, or pace.

The Social Security Administration denied Ms. O'Connor-Spinner's 2004 application for benefits and her request for reconsideration.  Ms. O'Connor-Spinner requested a hearing, and on January 31, 2004, she and her attorney appeared before an ALJ.  R. 13.  On June 21, 2004, the ALJ issued an opinion denying benefits.  R. 13-20.  Ms. O'Connor-Spinner sought review of this decision by the Appeals Council.  On October 19, 2006, the Appeals Council denied review of the ALJ's decision.  R 6-9.  Ms. O'Connor-Spinner then brought this action for judicial review.

*Disability and the Standard of Review*

To be eligible for the disability insurance benefits and supplemental security income she seeks, Ms. O'Connor-Spinner must establish that she suffered from a disability within the meaning of the Social Security Act.  To prove disability under the Act, the claimant must show that she is unable to engage in any substantial gainful activity by reason of a medically determinable physical or

mental impairment that could be expected to result in death or that has lasted or could be expected to last for a continuous period of not less than 12 months.  Ms. O'Connor-Spinner was disabled only if her impairments were of such severity that she was unable to perform work that she had previously done and if, based on her age, education, and work experience, she also could not engage in any other kind of substantial work existing in the national economy, regardless of whether such work was actually available to her.  42 U.S.C. §§ 423(d), 1382c(a)(3).

This standard is a stringent one.  The Act does not contemplate degrees of disability or allow for an award based on partial disability.  *Stephens v. Heckler*, 766 F.2d 284, 285 (7th Cir. 1985).  Even claimants with substantial impairments are not necessarily entitled to benefits, which are paid for by taxes, including taxes paid by those who work despite serious physical or mental impairments and for whom working is difficult and painful.

To determine whether Ms. O'Connor-Spinner was disabled under the Social Security Act, the ALJ followed the familiar five-step analysis set forth in 20 C.F.R. § 404.1520.  The steps are as follows:

(1)    Has the claimant engaged in substantial gainful activity?  If so, she was not disabled.

(2)    If not, did the claimant have an impairment or combination of impairments that are severe?  If not, she was not disabled.

(3)    If so, did the impairment(s) meet or equal a listed impairment in the appendix to the regulations?  If so, the claimant was disabled.

(4)     If not, could the claimant do her past relevant work?  If so, she was not disabled.

(5)     If not, could the claimant perform other work given her residual functional capacity, age, education, and experience?  If so, then she was not disabled.  If not, she was disabled.

See generally 20 C.F.R. §§ 404.1520, 416.920.  When applying this test, the burden of proof is on the claimant for the first four steps and on the Commissioner for the fifth step.  *Zurawski v. Halter*, 245 F.3d 881, 885-86 (7th Cir. 2001).

The ALJ found that Ms. O'Connor-Spinner satisfied step one.  She had not engaged in any substantial gainful activity since the alleged onset of her disability on December 18, 2003.  R. 15.  At step two, the ALJ found that Ms. O'Connor-Spinner had severe impairments at the relevant time, including degenerative disk disease, bilateral carpal tunnel syndrome, sleep apnea, restrictive lung disease, obesity, and depression.  *Id.*  These impairments did not meet or equal any of the listings that would have automatically qualified Ms. O'Connor-Spinner for benefits at step three.[4]  At step four, the ALJ determined that Ms. O'Connor-Spinner was no longer able to perform her past relevant work.  R. 19.

At step five, the ALJ determined that Ms. O'Connor-Spinner retained the residual functional capacity to perform sedentary work with a number of

---

[4]The ALJ also found that Ms. O'Connor-Spinner's thrombocytopenia, gastroesophgeal reflux disease, and chronic sinusitis were not severe.  R. 16.  Ms. O'Connor-Spinner has not contested those determinations in this action.

limitations.  R. 16.  Based on the testimony of the vocational expert, see R. 807-13, the ALJ found that a person with that residual functional capacity would have been able to work as a sedentary hand packer, sedentary cashier, or sedentary telephone solicitor.  R. 20.  The ALJ therefore denied benefits.

The Social Security Act provides for judicial review of the Commissioner's denial of benefits.  42 U.S.C. § 405(g).  Because the Appeals Council denied further  review of the ALJ's findings, the ALJ's findings are treated as the final decision of the Commissioner.  *Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000); *Luna v. Shalala*, 22 F.3d 687, 689 (7th Cir. 1994).  If the Commissioner's decision is both supported by substantial evidence and based on the proper legal criteria, it must be upheld by a reviewing court.  42 U.S.C. § 405(g); *Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005), citing *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support conclusion."  *Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995), quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

To determine whether substantial evidence exists, the court reviews the record as a whole but does not attempt to substitute its judgment for the ALJ's judgment by reweighing the evidence, resolving material conflicts, or reconsidering the facts or the credibility of the witnesses.  *Cannon v. Apfel*, 213 F.3d 970, 974 (7th Cir. 2000).  Where conflicting evidence allows reasonable minds to differ as to whether a claimant is entitled to benefits, the court must defer to the

Commissioner's resolution of the conflict.  *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997).  A reversal and remand may be required, however, if the ALJ committed an error of law, *Nelson v. Apfel*, 131 F.3d 1228, 1234 (7th Cir. 1997), or based the decision on serious factual mistakes or omissions.  *Sarchet v. Chater*, 78 F.3d 305, 309 (7th Cir. 1996).  The ALJ's decision must be based upon consideration of all the relevant evidence, and the ALJ must articulate at some minimal level his analysis of the evidence so that the course can trace adequately the path of the ALJ's reasoning.  *Diaz*, 44 F.3d at 307-08.

## Discussion

Ms. O'Connor-Spinner contends that the ALJ erred:  (1) by failing to make a proper mental residual functional capacity assessment; (2) by not adequately addressing all medical opinions in the record; and (3) by improperly providing the vocational expert with an incomplete hypothetical question.

I.    *The ALJ's Mental Residual Functional Capacity Assessment*

Ms. O'Connor-Spinner first argues that the ALJ erred at step four of the decision-making process by failing to evaluate adequately her limitations and work-related abilities on a function-by-function basis, as required by SSR 96-8p. When the ALJ determines, as he did here, that the claimant suffers from a severe mental impairment that does not meet a listing, the ALJ must perform a mental residual functional capacity assessment.  20 C.F.R. § 404.1520a(d)(3).

Residual functional capacity is the most the claimant can still do despite her mental and physical limitations.  20 C.F.R. § 404.1545(a)(1); SSR 96-8p.  When assessing the claimant's mental abilities, the ALJ will "first assess the nature and extent of your mental limitations and restrictions and then determine your residual functional capacity for work activity on a regular and continuing basis." 20 C.F.R. § 404.1545(c).  Much of the same information and evidence that is used to determine whether a claimant's impairment meets or equals a listing in step three of the decision-making process is also used to determine the mental residual functional capacity.  SSR 85-16; SSR 96-8p (explaining that the Psychiatric Review Technique Form summarizes various functions that must be evaluated in a more detailed assessment to determine mental residual functional capacity).

The determination of mental residual functional capacity, however, focuses on the claimant's work-related abilities retained in spite of medical limitations. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00.  The mental residual functional capacity assessment therefore augments the listings determination by requiring consideration of an expanded list of work-related capacities.  *Id.*  The broad factors that must be considered include the ability (1) to understand, remember and carry out simple instructions; (2) to make simple work-related decisions; (3) to respond appropriately to supervision, coworkers and customary work pressures in a work setting; and (4) to deal with routine changes in work settings.   20 C.F.R. § 404.1545(c); SSR 96-9p; SSR 85-16.   In determining a claimant's mental residual functional capacity, evidence to be considered includes the history,

findings, and observations from medical sources and reports of activities of daily living and work activity, as well as testimony of third parties.  SSR 85-16.  In formulating the residual functional capacity assessment, the ALJ must include a narrative discussion describing how the evidence supports each conclusion, citing medical facts and non-medical evidence.  SSR 95-8p.

In formulating Ms. O'Connor-Spinner's mental residual functional capacity, the ALJ accepted the function-by-function determinations made by Dr. Unversaw. Dr. Unversaw found in his functional capacity assessment that Ms. O'Connor-Spinner had "moderate" limitations in her concentration, pace, and persistence, and noted in more conclusory terms that she "maintains the ability to perform moderately complex work-related tasks."  R. 267.  Based on this assessment, the ALJ concluded that Ms. O'Connor-Spinner's "depression causes her deficits in concentration, persistence, and pace.  Moreover, her sleep apnea and side effects of medication may cause distractions from fatigue.  Accordingly, she should perform work involving only routine, repetitive tasks and understanding and carry out only simple instructions."  R. 16.

Ms. O'Connor-Spinner argues that the ALJ failed to assess properly Dr. Kamla Paul's evaluation on a function-by-function basis.  While the ALJ reviewed Dr. Paul's finding in his opinion, Ms. O'Connor-Spinner points out he did not explicitly weigh the particular finding against each of the four broad factors of SSR

96-8p.  SSR 96-8p, however, does not require such a comprehensive function-by-function review of a claimant's work-related abilities.[5]

The ALJ discussed Dr. Paul's consultative psychiatric evaluation in his decision.  Dr. Paul "diagnosed a depressive order and noted that the claimant 'gets confused.'"  R. 17.  The ALJ then accepted and incorporated into his mental residual functional capacity assessment Dr. Unversaw's findings because they were consistent with "[Dr. Paul's] psychological evaluation in the record [which found] that the claimant has problems with concentration type issues."  R. 19.  By reviewing the function-by-function determinations of Dr. Unversaw and finding Dr. Unversaw's evaluation to be consistent with Dr. Paul's mental residual functional capacity assessment, the ALJ satisfied the function-by-function requirement of SSR 96-8p.

Ms. O'Connor-Spinner also argues that the ALJ failed to discuss self-assessments and third-party reports that described poor concentration, memory deficiencies, difficulties following written and spoken instructions, difficulties

---

[5]Ms. O'Connor-Spinner incorrectly states in her reply brief that the ALJ is required under SSR 96-8p to include a narrative discussion describing how the evidence supports the ALJ's mental residual functional capacity on each of the fourteen functions listed in DI 25020.010 of the Social Security Administration's Program Operation Manual System (POMS).  POMS DI 25020.010 breaks down the four broad categories that must be considered on a function-by-function basis under SSR 96-8p into fourteen more specific subcategories.  While these fourteen mental abilities are labeled by the Commissioner as being needed for any job, no regulation requires the ALJ to perform a function-by-function assessment of a claimant's residual functional capacity on each of these fourteen specific subcategories.  SSR 96-8p requires only that the four broad categories listed in 20 C.F.R. § 404.1545 be considered on a function-by-function basis.

handling changes in routine, problems handling stress, and issues with controlling anger. The ALJ did not specifically mention every issue raised by Ms. O'Connor-Spinner and the third-party reports in the record. And as Magistrate Judge Crocker has noted, the Commissioner's ruling regarding residual functional capacity has left some ambiguity as to how an ALJ should properly assess a claimant's mental residual functional capacity. *Seamon v. Barnhart*, 2005 WL 1801406, at *16 n.2 (W.D. Wis. July 29, 2005).[6]

An ALJ, however, is not required to complete a written assessment of every piece of evidence in the record. *Lechner v. Barnhart*, 321 F. Supp. 2d 1015, 1033 (E.D. Wis. 2004), citing *Henderson v. Apfel*, 179 F.3d 507, 514 (7th Cir. 1999). SSR 96-8p demands that the ALJ provide a written assessment considering and addressing relevant medical source opinions when formulating the mental residual functional capacity assessment. In this case, the ALJ thoroughly reviewed the record and accepted the function-by-function determinations made by Dr. Unversaw, the only medical expert in the record to evaluate Ms. O'Connor-Spinner's mental residual functional capacity. The ALJ's mental residual

---

[6]Unlike the rule for evaluating physical residual functional capacity, SSR 96-8p has no "directive regarding the manner in which an ALJ may translate mental RFC into categories, or otherwise express it in shorthand fashion." *Seamon*, 2005 WL 1801406, at *16 n.2. Ms. O'Connor-Spinner suggests that the Social Security Administration's own Form SSA-4734-F4-SUP would be a good template for the ALJ to use to ensure that all the relevant evidence in the record is assessed on a function-by-function basis. Pl. Reply Br. at 3. But, as Ms. O'Connor-Spinner readily acknowledges, no ruling or regulation requires the ALJ to weigh every piece of evidence in the record against the 20 work-related factors listed in Form SSA-4734-F4-SUP. *Id.*

functional capacity determination therefore satisfied the requirements of SSR 96-8p and SSR 85-16 and is supported by substantial evidence in the record.

II.    *Dr. Unversaw's Report*

Ms. O'Connor-Spinner next argues that the ALJ failed to discuss Dr. Unversaw's finding that she is "moderately limited" in her abilities to accept instructions and to respond appropriately to criticism from supervisors. Because SSR 96-8p requires all medical opinions to be addressed adequately, Ms. O'Connor-Spinner argues the ALJ was required either to accept or reject Dr. Unversaw's finding and to explain his reasoning for doing so.

Under the "Summary Conclusions" section of the mental residual functional capacity form, Dr. Unversaw marked that Ms. O'Connor-Spinner was "Not Significantly Limited" in eighteen out of twenty areas of mental functioning. R. 265-66.[7] For two areas – the ability to maintain attention and concentration for extended periods and the ability to accept instructions and to respond appropriately to criticism from supervisors – he marked "Moderately Limited." *Id.* While the ALJ discussed and accepted Dr. Unversaw's finding that Ms. O'Connor-Spinner had difficulties with concentration, he did not address Dr. Unversaw's

---

[7]The "Summary Conclusions" section of the mental residual functional capacity form (SSA-4734-F4-SUP) lists 20 work-related abilities that are rated by the medical consultant examining the claimant. POMS DI 25020.010. The form instructs the medical consultant to evaluate each mental activity within the context of the claimant's capacity to sustain that activity over the course of a work day, on an ongoing basis.

notation that Ms. O'Connor-Spinner was "Moderately Limited" in her ability to accept instructions and to respond appropriately to criticism from supervisors.

The ALJ, however, is not required to include every limitation identified by state agency doctors on the "Summary Conclusions" section of the mental residual functional capacity form. See *Lembke v. Barnhart*, No. 06-C-0306-C, 2006 WL 3834104, at *8 (W.D. Wis. Dec. 29, 2006). The purpose of the "Summary Conclusion" section on the mental residual functional capacity form is to provide a worksheet to the psychiatrist or psychologist examining the claimant to ensure all pertinent mental activities and the claimant's degree of limitation for sustaining these activities are adequately considered. POMS DI 25020.010.

In section three of the mental residual functional capacity form, Dr. Unversaw discussed third-party reports indicating that Ms. O'Connor-Spinner "isn't real social, but she is polite to others in public provided they are polite to her," noting that "[h]er third party did not indicate . . . any problems with the claimant getting violent when upset, but did state that she can get rude if others are rude to her." R. 267. After summarizing the third-party reports, Dr. Unversaw opined that Ms. O'Connor-Spinner's "psychological condition appears to moderately affect her concentration/pace/persistence." *Id.* He made no further finding in section three regarding Ms. O'Conner-Spinner's limitations accepting instructions or responding appropriately to criticism from supervisors.

The ALJ fully accepted Dr. Unversaw's conclusions from section three of the mental residual functional capacity form, finding in his decision that Ms. O'Connor-Spinner has "deficits in concentration, persistence, and pace."  R. 16. This is a reasonable evaluation of Dr. Unversaw's mental residual functional capacity assessment.  The ALJ satisfied the requirements of SSR 96-8p and POMS DI 25020.010 and the decision is supported by substantial evidence in the record.

III.   *ALJ's Hypothetical Question to the Vocational Expert*

Finally, Ms. O'Connor-Spinner argues that the ALJ failed to incorporate his mental residual functional capacity finding properly in the hypothetical questions posed to the vocational expert.  Based on the vocational expert's opinion, the ALJ found at step five of the decision-making process that Ms. O'Connor-Spinner would be able to perform a significant number of jobs that exist in the national economy.  R.19-20.[8]

Generally, when the ALJ poses the key hypothetical question to a vocational expert, the question must include "all limitations supported by medical evidence in the record."  *Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002).  "The reason for the rule is to ensure that the vocational expert does not refer to jobs that the

---

[8]The vocational expert testified that, given all of the limitations the ALJ described in his key hypothetical question, Ms. O'Connor-Spinner "would be able to perform the requirements of representative occupations such as sedentary hand packer (75 jobs in the region and 150,000 in the national economy), sedentary cashier (200/500,000), and sedentary telephone solicitor (100/225,000)."  R.20.

applicant cannot work because the expert did not know the full range of the applicant's limitations." *Id.* But the hypothetical question does not necessarily need to include every physical and mental limitation, as long as evidence in the record indicates that the vocational expert knew the extent of the claimant's limitations through, for example, an independent review of the medical records. *Id.* In this case, however, no evidence indicates that the vocational expert reviewed Ms. O'Connor-Spinner's medical records or other supporting documents.

The ALJ found that Ms. O'Connor-Spinner had "moderate limitations in her abilities to maintain concentration, persistence, or pace." R. 16. The ALJ did not incorporate this particular limitation into his key hypothetical question to the vocational expert. Instead of providing a description of the claimant's limitations, the ALJ listed the limitations in terms of work the claimant could perform: "routine, repetitive work tasks" that involved "understanding and carrying out only simple instructions." R. 16.

The Commissioner argues that the ALJ's hypothetical question limiting Ms. O'Connor-Spinner to "routine, repetitive work tasks" that involve "understanding and carrying out only simple instructions" adequately accommodated Ms. O'Connor-Spinner's deficits in concentration. Def. Br. at 9. Ms. O'Connor-Spinner argues that, by not incorporating her moderate limitations in concentration, persistence, and pace, into the key hypothetical question, the ALJ

failed to provide the vocational expert with a complete picture of her actual limitations.  Pl. Reply Br. at 8.

Courts have not reached a clear consensus regarding whether it is appropriate for an ALJ to phrase hypothetical questions about mental residual functional capacity in terms of the work a claimant can perform as opposed to providing a claimant's limitations and "allowing the vocational expert to conclude on his own what types of work [the] plaintiff can perform."  *Kusilek v. Barnhart*, No. 04-C-310-C,  2005 WL 567816, at *4 (W.D.Wis. March 2, 2005), *aff'd mem.*, No. 05-2010, 2006 WL 925033, at *3 (7th Cir. April 4, 2006).

On this issue, this court's reasoning has been guided by the Seventh Circuit's discussion in *Young v. Barnhart*, 362 F.3d 995 (7th Cir. 2004).  See also *Everroad v. Astrue*, No. 4:06-cv-100-DFH-WGH, 2007 WL 2363375, at *8 (S.D. Ind. Aug. 10, 2007) (following *Young* to remand case where ALJ's hypothetical question did not "constitute a reliable basis for the vocational expert's determination").  In *Young*, the ALJ posed the hypothetical question to the vocational expert in terms of the types of work the claimant could perform, asking the vocational expert to assume that the person "had the residual capacity to perform . . . simple, routine, repetitive, low stress work with limited contact with coworkers and the public." 362 F.3d at 1002.  The Seventh Circuit found that the residual functional capacity's conclusory language was flawed because the ALJ had told the vocational expert "what types of work Young could perform rather

-17-

than setting forth Young's limitations and allowing the expert to conclude on his own what types of work Young could perform." 362 F.3d at 1004 n.4.[9]

*Young* raises a caution flag regarding the conclusory terms used by the ALJ's hypothetical question in this case. To resolve the issue, it is important to examine carefully whether the substance of the ALJ's mental residual functional capacity finding and corresponding hypothetical question sufficiently incorporated all of Ms O'Connor-Spinner's limitations supported by the record. See *Seamon*, 2005 WL 1801406, *16 (W.D. Wis. 2005), citing *Kasarsky v. Barnhart*, 335 F.3d 539, 543 (7th Cir. 2002). As Judge Crabb explained in *Kusilek,* the central lesson in cases considering this issue appears to be that an ALJ "is free to formulate his mental residual functional capacity assessment in terms such as 'able to perform simple, routine, repetitive work' so long as the record adequately supports that conclusion." *Kusilek*, 2005 WL 567816, at *4.

For example, courts have held that when only one medical expert translates her findings on "B" criteria of listings to a particular residual functional capacity assessment, the ALJ may reasonably rely on that opinion in formulating a hypothetical question for the vocational expert. In *Johansen v. Barnhart*, 314 F.3d 283 (7th Cir. 2002), two medical experts concluded that the claimant had moderate mental limitations in three of the twenty work-related areas of mental functioning listed on the mental residual functional capacity form. One of the

---

[9]The Court of Appeals, finding remand necessary for other reasons, declined to decide whether the error warranted reversal.

medical consultants, Dr. Matkom, translated those findings into an residual functional capacity assessment, concluding that the claimant could perform "low-stress, repetitive work." *Id.* at 289. The ALJ then asked the vocational expert a hypothetical question about an individual who could perform "repetitive, low-stress work," and the vocational expert identified a significant number of jobs in the regional economy. The ALJ, relying on this testimony, found the claimant was not disabled. "[B]ecause Dr. Matkom was the only medical expert who made an RFC determination," the Court of Appeals held that "the ALJ reasonably relied upon his opinion in formulating the hypothetical to present to" the vocational expert. *Id.* at 289. See also *Kasberger v. Barnhart*, No. 05-C-0638-C, 2006 WL 3375369, at *10 (W.D. Wis. 2006) (finding that the ALJ correctly relied on the conclusions of the state agency consultants).

As in *Johansen*, one medical expert in this case made a mental residual functional capacity assessment. Dr. Unversaw found that Ms. O'Connor-Spinner's "psychological condition appears to moderately affect her concentration/pace/persistence. However, claimant *maintains the ability to perform moderately complex work-related tasks.*" R. 267 (emphasis added). The ALJ accepted Dr. Unversaw's conclusion that Ms. O'Connor-Spinner's "depression causes her deficits in concentration, persistence, and pace." R. 19. In his corresponding hypothetical question to the vocational expert, the ALJ then formulated an even more restrictive mental residual functional capacity than Dr. Unversaw recommended, limiting Ms. O'Connor-Spinner to only "routine,

repetitive tasks and understanding and carrying out only simple instructions." R. 16.

Framing hypothetical questions that seem to tell the vocational expert what types of work a claimant could perform rather than incorporating the claimant's limitations in the questions and allowing the expert to draw her own conclusions is obviously a problematic practice. The practice creates the risk that an incomplete hypothetical question, not sufficiently incorporating all of the claimant's actual limitations supported by substantial evidence in the record, will lead the vocational expert to find a significant number of jobs in the regional and national economy that the claimant could not actually perform.

In this case, however, the key hypothetical question was sufficiently supported by substantial evidence in the record. No conflicting medical evidence creates doubt as to whether all of Ms. O'Connor-Spinner's actual limitations were sufficiently incorporated into the key hypothetical question. The court requires only that the hypothetical question to the vocational expert be supported by the medical evidence in the record. *E.g.*, *Townsend v. Astrue*, No. 07 C 565, 2007 WL 2915188, at *7 (N.D. Ill., Oct. 7, 2007), citing *Johansen*, 314 F.3d at 288. Dr. Unversaw, the only medical expert in the record to make a mental residual functional capacity assessment, opined on the types of work Ms. O'Connor-Spinner was able to perform. The ALJ reasonably relied on Dr. Unversaw's

opinion. The mental residual functional capacity and corresponding hypothetical question posed by the ALJ were sufficient.

*Conclusion*

For the reasons explained above, the ALJ's decision denying disability insurance benefits and supplemental security income disability benefits is affirmed.  Final judgment shall be entered accordingly.

So ordered.

Date:  December 20, 2007

DAVID F. HAMILTON, JUDGE
United States District Court
Southern District of Indiana

Copies to:

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov

Timothy J. Vrana
tim@timvrana.com